## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DANIEL SHIPLEY and MELINDA SHOEMAKER, on behalf of themselves and all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **DEMAND FOR JURY TRIAL** |
| | |
| FCA US, LLC, | |
| Defendant. | |

## PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Daniel Shipley and Melinda Shoemaker bring this action against Defendant FCA US LLC, ("Defendant" or "Fiat"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Fiat vehicle owners and lessees whose vehicles contain defective transmission systems. The Class Vehicles include the following makes and models: 2012-2015 Fiat 500 models (hereinafter referred

1

to collectively as the "Class Vehicles") containing the C635 Dual Dry Clutch Transmission ("DDCT").[1]

2.     Upon information and belief, the Class Vehicles contain a defectively designed, manufactured and programmed Powertrain Control Module ("PCM"). The PCM in the Class Vehicles is defective because it contains an incorrect software calibration resulting in, among other problems, delayed and unpredictable throttle response, sudden stalling, diminished ability to accelerate, loss of power, inability to maintain vehicle speed and failure to shift properly. Furthermore, and because of the incorrect PCM software calibration by Defendant, this defect causes excessive and premature wear of the dual clutches contained within the transmission, as well as premature wear of the transmission components, often resulting in catastrophic transmission failure and/or risk of overheating and vehicle fire (collectively, the "PCM Defect").

3.     Defendant misrepresented the standard, quality, and grade of the Class Vehicles and knowingly, actively, and affirmatively omitted and/or concealed the existence of the PCM Defect to increase profits by selling additional Class Vehicles. Knowledge and information regarding the PCM Defect and associated safety risks were in the exclusive and superior possession of Defendant and its dealers, and were not provided to Plaintiffs and members of the Classes, who could

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

not reasonably discover the defect through due diligence. Based on pre-production testing, pre-sale durability testing, design failure mode analysis, warranty and post-warranty claims, and consumer complaints to dealers and NHTSA, *inter alia*, Defendant was aware of the PCM Defect and materially omitted the existence of and/or fraudulently concealed the defect from Plaintiffs and members of the Classes.

4.      Plaintiffs and members of the Classes (defined below) assert claims against Defendant for fraud, negligent misrepresentation, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, unjust enrichment, breach of express and implied contractual duties, breach of express and implied warranties, and violations of state consumer protection laws.

5.      As a direct result of Fiat's wrongful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to actual damages, including damages for the benefit of the bargain they struck when purchasing their vehicles, the diminished value of their vehicles, statutory damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief. Specifically, Plaintiffs seek: immediate installation of an effective fix of the PCM Defect that does not diminish the functionality of the Class Vehicles, replacement of the transmissions and components damaged by the PCM Defect; provision of a temporary replacement vehicle while repair of the defect is pending; and/or buyback of the Class Vehicles;

compensation for any additional sums spent on any repairs to the defective

transmission and/or any "fix" performed to the Class Vehicles; restitution for

purchase of extended warranties that will go unused; compensation for the

increased loss in value and depreciation of the Class Vehicles due to widespread

knowledge of the PCM Defect; and punitive damages for Fiat's knowing fraud that

put drivers and members of the public nationwide at risk.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action pursuant to 28

U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100

or more class members, (ii) there is an aggregate amount in controversy exceeding

$5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity

because at least one plaintiff and one defendant are citizens of different States.

This court has supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by

virtue of diversity jurisdiction being exercised under the Class Action Fairness Act

("CAFA").

7.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a),

(b) and (c) because Defendant maintains its principal place of business in this

District, because a substantial part of the events or omissions giving rise to

Plaintiffs' claims occurred in this District, and because Defendant conducts a

4

substantial amount of business in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in this District and venue is proper.

## PARTIES

### Plaintiff Daniel Shipley

8.      Plaintiff Daniel Shipley is a resident of California and currently resides in Palmdale, California.

9.      Plaintiff purchased a new 2015 Fiat 500 on or about March 1, 2016 from Hunter Dodge, an authorized Fiat dealer and repair center located in Lancaster, California.

10.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: 3C3CFFAR4FT594538.

11.     On or about July 19, 2017, with approximately 18,000 miles on the odometer, the transmission in Plaintiff's vehicle began to jerk back and forth while being operated.

12.     Shortly thereafter, on July 21, 2017, Plaintiff took his vehicle to Hunter Dodge and explained to the service department that the transmission was jerking and that Plaintiff did not feel comfortable operating the vehicle since it reacted unpredictably and it could not be safely controlled. Additionally, there

5

were numerous times Plaintiff was driving in traffic when the transmission began to jerk uncontrollably and forced Plaintiff to pull over to the side of the road until traffic thinned and Plaintiff was not placing himself, his passengers, or others on the road in immediate danger.

13.    Hunter Dodge inspected the vehicle and test drove vehicle for 10 miles on highway and streets and could not duplicate the issue Plaintiff was experiencing.   Hunter Dodge returned possession of the vehicle to Plaintiff.

14.    On August 30, 2017, Plaintiff's wife took the vehicle in to Hunter Dodge, and explained to the service department that the transmission was jerking and that Plaintiff and Plaintiff's wife did not feel comfortable operating the vehicle since it reacted unpredictably and it could not be safely controlled. Additionally, there were numerous times Plaintiff's wife was driving in traffic when the transmission began to jerk uncontrollably and forced Plaintiff's wife to pull over to the side of the road until traffic thinned and Plaintiff's wife was not placing herself, her passengers, or others on the road in immediate danger. Hunter Dodge was unable to duplicate the issue and declined to repair Plaintiff's vehicle.

15.    After presenting the vehicle for repairs, Hunter Dodge eventually recommended that Plaintiff install a "flight control" on his vehicle, which Plaintiff had installed. The flight control module supposedly allows Plaintiff to assess in real time how the transmission is performing, and uses different colors to indicate

6

the functionality of the transmission. A normal functioning transmission is supposed to display a green color. Since the installation of the flight control module in Plaintiff's vehicle, however, the light has not displayed a green color.

16.     To date, Hunter Dodge has refused to repair or replace Plaintiff's transmission, despite Plaintiff presenting the vehicle for repair on numerous occasions.

17.     Plaintiff Shipley has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the PCM Defect, including, but not limited to, out of pocket loss associated with the PCM Defect and future attempted repairs and diminished value of his vehicle.

18.     None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the PCM Defect prior to purchase.

**Plaintiff Melinda Shoemaker**

19.     Plaintiff Melinda Shoemaker is a resident of Ohio and currently resides in Delta, Ohio.

20.     In or about September 2013, Plaintiff purchased a new 2014 Fiat 500L from Zeigler Fiat, an authorized Fiat dealer and repair center located in Zeigler, Michigan. Plaintiff took delivery of the vehicle on November 23, 2013.

21.    Plaintiff conducted research on the 2014 Fiat 500L at her home in Ohio and made the decision to purchase the vehicle at her home in Ohio, but opted to go to Michigan to purchase the vehicle in Michigan because of the proximity of the dealership to her home and because it had the 2014 Fiat 500L in stock.

22.    Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. Her vehicle bears Vehicle Identification Number: ZFBCFADH6EZ016369.

23.    In or around July 2017, with approximately 80,000 miles on the odometer, the dual-clutch transmission in Plaintiff's vehicle began to malfunction. The first time this occurred, Plaintiff was in a drive through with other cars at a McDonalds. Her vehicle would not shift into gear and, as a result, she was forced to push the car out of the drive through and had it towed to Yark Fiat.

24.    Yark Fiat inspected her vehicle and informed Plaintiff that they could not find anything wrong with the vehicle because there were no malfunction codes displaying and informed Plaintiff she could come pick up her vehicle.

25.    Plaintiff drove approximately one mile away, during rush hour traffic, and her vehicle again experienced the defect and would not shift into gear. Fortunately, Plaintiff's husband was able to navigate out of traffic, turn onto a side street, and coast into a parking lot. Plaintiff's vehicle was jerking uncontrollably

during this event. Plaintiff called Yark Fiat, which sent a tow truck for Plaintiff's vehicle.

26.     Shortly thereafter, Plaintiff received notice that there was a recall on her vehicle for updated PCM software for the transmission. Plaintiff had the PCM recall completed by Yark Fiat.

27.     After multiple attempts, the employees of Yark Fiat reproduced the transmission jerking. The employees then opened her transmission and said that her clutch had burned out. Plaintiff asked if Yark Fiat would cover the necessary repair costs, but Yark Fiat declined to do so without charge.

28.     Plaintiff then called Fiat and asked that Fiat cover the necessary repair costs.  Defendant declined to do so without charge and also declined to offer Plaintiff any goodwill price reduction.

29.     In order to have her vehicle operational, Plaintiff was forced to pay Yark Fiat approximately $3,200 for the necessary repairs to her transmission.

30.     Immediately after driving off the lot, the transmission issues reoccurred. Yark Fiat hooked Plaintiff's vehicle up to a "flight box" that displayed 125 pounds of pressure on the brake pedal without it being pressed. Plaintiff then paid to have the ABS module replaced for $1,700. Prior to paying for the replacement, Plaintiff again contacted Defendant and sought at no cost repairs.

Defendant again declined and also declined to offer Plaintiff any goodwill price reduction.

31.    Plaintiff Shoemaker has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the PCM Defect, including, but not limited to, out of pocket loss associated with the PCM Defect and future attempted repairs and diminished value of his vehicle.

32.    Neither defendant, nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the PCM Defect prior to purchase.

**<u>Defendant</u>**

33.    Defendant is a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. Fiat is a member of the Fiat Chrysler Automobiles N.V. ("Fiat Chrysler") family of companies. Fiat Chrysler is a Dutch corporation with its headquarters in London, England. Fiat engages in interstate commerce by selling vehicles through this its authorized dealers located in every state of the United States, including within this District.

34.    At all times relevant to this action, Defendant and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States. Defendant and/or its agents designed, caused,

manufactured, and/or installed the PCM Defect in the Class Vehicles. Defendant

and/or its agents also developed and disseminated the owner's manuals, warranty

booklets, advertisements, and other promotional materials relating to the Class

Vehicles.

**FACTUAL ALLEGATIONS**

A. **The PCM Defect within the Class Vehicles**

35.     Fiat designs, engineers, manufactures and sells vehicles under the

Chrysler, Jeep, Dodge, Ram, Fiat and Maserati brands in this District and

throughout the United States. Fiat manufactures, distributes, and sells motor

vehicles and parts through its network of authorized motor vehicle dealers.

36.     As of 2015, Fiat is the seventh largest automaker in the world by unit

production.

37.     The Fiat 500 is a transverse vehicle with model designations including

the 500, 500X, 500e and 500L.

38.     Upon information and belief, the 500L platform was based on Fiat's

"Small" platform, first used with the Fiat Grande Punto, and further developed

since its launch in 2005. With the 500L, the platform is both longer and wider, to

accommodate the 500L's cab forward architecture. The concept prioritizes interior

volume and reduction of the vehicles volume dedicated to mechanicals, moving the

cockpit forward, toward the front of the car.

11

39.     Upon information and belief, the 500X is based on the Small Wide 4×4 architecture, a platform evolved from the GM Fiat Small platform used for the Fiat Grande Punto and Fiat 500L.

40.     Upon information and belief, only Fiat models 500X and 500L contain the C635 Dual Dry Clutch Transmission, colloquially referred to as the Euro Twin Clutch Transmission.

41.     A dual-clutch transmission (DCT), sometimes referred to as a twin-clutch transmission or double-clutch transmission, is a type of automatic transmission or automated automotive transmission.  A DCT operates without the use of a clutch pedal as typically used with manual shifting transmissions.

42.     A dual-clutch transmission eliminates the torque converter as used in conventional automatic transmissions. Instead, a DCT uses two separate clutches, one clutch for odd gear sets (gears 1, 3 and 5) and one clutch for even gear sets (i.e. gears 2, 4, and 6).

43.     The underlying purpose of the twin clutch design is to facilitate faster gear shifting. In theory, the transmission is able to pre-select (or predict) the next gear the driver is likely to shift into, which allows quicker gear shifts.

44.     A DCT could be described as two separate manual transmissions (with their respective clutches) contained within one housing, and working as one unit. DCTs are usually operated in a fully automatic mode, and many also have the

12

ability to allow the driver to manually shift gears in semi-automatic mode while still using the transmission's electro-hydraulics.

45.    There are two fundamental types of clutches used in dual-clutch transmissions: either two wet multi-plate clutches which are bathed in oil (for cooling), or two dry single-plate clutches. The wet clutch design is generally used for higher torque applications, whereas the dry clutch design is generally suitable for smaller vehicles with lower torque outputs.

46.    While the dry clutch variants may be limited in torque compared to the wet clutch system, the dry clutch design typically offer an increase in fuel efficiency, due to the lack of pumping losses of the transmission fluid in the clutch housing.

47.    The C635 Dual Dry Clutch Transmission ("C635 DDCT") in the Class Vehicles is an electronically controlled and automatically shifted six-speed transmission that utilizes a double dry clutch design.

48.    The C635 DDCT is rated to handle torque inputs of up to 260 lb·ft with an overall weight of 179 lbs, including transmission oil and transmission control unit.

49.    The intended purpose of the Class Vehicle's dual-clutch design is to combine the comfortable gear shifts of an automatic transmission with the lower operating costs and better fuel economy of a manual transmission.

13

50.     The heart of the transaxle is the main shaft that consists of two

mutually coaxial driveshafts. Two dry clutches (**Figure 1**), operated by two

separate slave cylinders, are used to transmit torque to the main shaft.



**Figure 1**

51.     A traditional concentric slave cylinder, located under the gearbox

casing, is used to operate the even-number gear clutch. A second slave cylinder,

located at the back of the gearbox casing, operates the odd-number gear clutch.

52.     A key component in this transaxle is the hydraulic power unit (**Figure
2**). It supplies hydraulic energy for performing two functions. First, it selects and

engages the gears in the transaxle. Second, it operates the slave cylinders that

engage and disengage the clutches.

14



Figure 2

53.     In operation, the clutch for the current gear should disengage and the clutch for the next gear engage. This should be done without interrupting torque delivery to the wheels, because the disengagement of current gear clutch and the engagement of the next gear clutch actually overlap. The shift from an odd-number gear to an even-number gear, or vice-versa, only requires the clutches to actuate.

54.     The command center of the **C635 DDCT** is the Powertrain Control Unit or PCM.

55.     A PCM is an automotive computer or control unit commonly controlling more than 100 factors in a vehicle.  The primary inputs to the PCM come from many sensors, of different types, that are located throughout the vehicle. The PCM processes these signals, based on software programming, and then sends commands to different components in the vehicle, including the transmission. The commands from the PCM to the transmission include, *inter alia*, when and how to shift gears and when and how to transmit power from the engine

15

to the drive wheels. The PCM also monitors the transmission function and is designed to notify the driver by illuminating an instrument cluster alert should any issues arise.

B. **Defendant's Knowledge of the PCM Defect**

56.     On March 22, 2017, Defendant announced a safety recall on certain 2014 model year Fiat 500L vehicles equipped with the 1.4L engine and automatic transmission.

57.     As explained by Defendant, some of these vehicles "*may experience a diminished ability to accelerate or to maintain speed due to a software calibration issue in the Powertrain Control Module (PCM). This incorrect PCM software calibration could limit the engine to only idle speed and torque even if the throttle is fully depressed; when the throttle is fully released and then depressed again, proper operation resumes. This safety defect may result in the diminished ability to accelerate or to maintain vehicle speed when expected. Diminished ability to accelerate or maintain vehicle speed may, in rare cases, result in a vehicle crash. This condition may occur without warning. FCA US will conduct a voluntary safety recall to reprogram the PCM with revised software calibrations.*" See Exhibit A, Letter from FCA dated 3/22/2017.

58.     On or about March 21, 2017, FCA submitted a chronology of events to NHTSA leading up to the PCM recall. *See* Exhibit B.

16

59.     According to the chronology submitted to NHTSA, Defendant became aware of the PCM Defect on June 14, 2014, when Powertrain Engineering identified a hesitation issue during the implementation of a new PCM for the 2015 Fiat 500L. On July 8, 2014, Defendant investigated the issue and determined the root cause to be the accelerator pedal calibration. On September 1, 2014, Defendant implemented a revised accelerator pedal calibration for the 2015 Fiat 500L to correct the issue. *Id.*

60.     Thereafter, on December 2, 2016, Defendant received a field report indicating a drivability issue with the 2014 Fiat 500L. On December 9, 2016, FCA concluded the root cause to be the accelerator pedal calibration, similar to the 2015 Fiat 500L issue. On December 14, 2016, Defendant completed a revised calibration which was released on February 6, 2017. A draft Technical Service Bulletin ("TSB") was submitted to Defendant's Vehicle Safety and Regulatory Compliance ("VSRC") organization.  VSRC identified a potential safety consequence within the TSB relating to delayed throttle response or hesitation. On March 14, 2017, FCA Italy decided, through their Vehicle Regulations Committee, to conduct a voluntary safety recall of the affected vehicles.[2] *Id.*

---

[2] As of March 6, 2017, FCA US claims to have only been aware of 16 Customer Assistance Inquiry Records, two Vehicle Owner Questionnaires, 13 field reports, 35 warranty claims, and was unaware of any accidents or injuries, potentially related to this concern. *See* Exhibit B. However, NHTSA alone contains 26 dual-clutch transmission related complaints involving the Class Vehicles, one involving

61.     Despite Defendant's March 22, 2017 Recall, the PCM Defect continues to occur in the Class Vehicles.

62.     In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the PCM Defect despite such having been contained in the Class Vehicles when manufactured by Defendant.

63.     Upon information and belief, Defendant, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and internal investigations, and (6) other various sources, was well aware of the PCM Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or provide any adequate remedy.

64.     Defendant failed to adequately research, design, test and/or manufacture the transmission systems in the Class Vehicles before warranting, advertising, promoting, marketing, and/or selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

65.     Defendant is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Defendant conducts tests, including pre-

---

an accident and four involving smoke emitting from the vehicle due to the transmission. *See* Section D, NHTSA ID Nos. 10824740, 10693724, 10693082 and 10691739.

sale durability testing, on incoming components, including the transmission and drivetrain components, to verify the parts are free from defect and align with Defendant's specifications and intended use of the Class Vehicles.

66.    Upon information and belief, Defendant performs a four-part durability evaluation on its vehicles before they are released for sale to the general public. The four steps are a virtual analysis, data acquisition, bench testing, and road testing.

67.    The virtual analysis stage is conducted by Fiat engineers. It is designed to identify risk areas early in the development process by using software simulations to identify potential part failures by using advanced mathematical models. This process allows Fiat to identify and correct any issues with its vehicles before they are produced and when it is the least costly to remedy.

68.    The data acquisition stage is also conducted by Fiat engineers. Fiat engineers collect and analyze road load data (data regarding the expected load the vehicles will undergo during their anticipated lifetime).

69.    Bench testing involves testing individual components of the vehicle to simulate real world conditions. Bench testing is designed to verify the overall soundness of a design under controlled conditions. The testing performed typically includes testing various component parts to failure.

70.     Finally, Defendant's presale durability road testing system is nicknamed DUMBO, which stands for Durability Monitoring Box and Off-board.

71.     The purposes of DUMBO is to detect preliminary degradation of vehicle component parts. Road testing of the vehicles occurs and data is logged through an on-board unit within the vehicle, which is then transferred to a server for analysis. The DUMBO system is used to verify the correct execution of durability tests, to monitor any performance losses, and to collect data. The collected data is then run through various event recognition, event validation, and performance evaluation algorithms to identify any loss of performance.

72.     Through these quality control metrics, FCA knew or should have known of the PCM Defect in the Class Vehicles prior to and shortly after the time of sale to Class members.

C. **Fiat's Warranties Related to the Transmission Defect**

73.     The Class Vehicles come with a four-year/50,000 mile Basic Limited Warranty. The Basic Limited Warranty lasts for four years from the date delivery of the Class Vehicle is taken, or for 50,000 miles on the odometer, whichever occurs first.

74.     Fiat instructs vehicle owners and lessees to bring their vehicles to a Fiat dealership for the warranty repairs. Many owners and lessees have presented Class Vehicles to Fiat dealerships with complaints related to the PCM Defect.

20

75.    Despite such defect having been contained in the Class Vehicles when manufactured by Defendant, in many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the defect, the repair and/or replacement of the transmission, and related expenses.

76.    Furthermore, a number of Class Members, who presented their Class Vehicles to Fiat dealerships because of issues related to the PCM Defect, were denied warranty repairs and, instead, informed that nothing was wrong with their vehicles. As a result, after expiration of the warranty period, Class Members are forced to pay costly repairs to correct the defect.

### D. <u>Complaints by Other Class Members</u>

77.    Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA that complain of the transmission defect in the Class Vehicles.

78.    Federal law requires Fiat to monitor defects which can cause a safety issue and report them within five (5) days. Fiat regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defective transmission through these complaints, *inter alia*.

79.    Below is a sample of consumer complaints made to NHTSA regarding the Class Vehicle's defective transmission and PCM Defect incidents beginning in

2013, almost one-year before Defendant conducted its own investigation of the

PCM Defect:

**2012-2015 Fiat 500**

**Date Complaint Filed:** 07/26/2017
**Date of Incident:** 07/25/2017
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 11010843
**Consumer Location:** MARIETTA, GA
**Vehicle MakeModelModelYear(s)**: FIAT 500L 2014
**SUMMARY:**
FOR THE LAST FEW MONTHS OUR FIAT 500L HAS NOT WANTED TO
ENGAGE IT'S TRANSMISSION. IT IS RANDOM WHETHER HAS BEEN
SITTING FOR AWHILE OR HAS BEEN DRIVEN. WE CAME BACK FROM A
TRIP AND AFTER SITTING FOR 4 DAYS IT WOULD NOT SHIFT INTO
REVERSE OR 1ST GEAR.

**Date Complaint Filed:** 12/16/2016
**Date of Incident:** 04/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10935644
**Consumer Location:** LOS OSOS, CA
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. WHILE DRIVING, THE
VEHICLE WOULD SHIFT INTO THE NETURAL GEAR AND THE VEHICLE
WOULD DECELERATE. THE DEALER DISCOVERED THAT THE
AUTOMATIC TRANSMISSION FAILED, BUT THERE WERE NO FAILURE
CODES TO VERIFY THE SPECIFIC ISSUE WITH THE AUTOMATIC
TRANSMISSION. THE VEHICLE WAS NOT REPAIRED. THE FAILURE
MILEAGE WAS 26,640.

**Date Complaint Filed:** 11/17/2016
**Date of Incident:** 03/01/2015
**Component(s):** UNKNOWN OR OTHER
**NHTSA ID Number:** 10926693
**Consumer Location:** LAWRENCEVILLE, GA
**Vehicle MakeModelModelYear(s)**

FIAT 500 2014
**SUMMARY:**
2014, FIAT 500 L POP, HATCHBACK, AUTOMATIC SINCE I BOUGHT THIS CAR IN FEB 2015, WITH 12,000 MILES ON IT, IVE HAD THE FOLLOWING PROBLEM. WHILE DRIVING THE TRANSMISSION IS SLOW TO RECEIVE THE INTENDED GEAR SELECTION WHICH IN TURN BRINGS A RUNNING CAR ON THE ROAD TO A NEAR COMPLETE STOP WHILE DRIVING. THIS CONDITION CAN CAUSE A FATAL ACCIDENT ON A BUSY HIGHWAY. I HAVE TAKEN IT TO THE FIAT SERVICE STATION NUMEROUS TIME SINCE THE PROBLEM WAS DETECTED. THEY HAVE CHANGED THE TRANSMISSION, REPROGRAMMED VARIOUS MODULES AND THE PROBLEM STILL REMAINS. I HAVE CONTACTED THE FIAT HEADQUARTERS NUMEROUS TIMES AND STATED MY CASE AND TOLD THEM THAT THE SERVICE STATION HAS DONE EVERYTHING AS PER THEIR RECALLS AND THE PROBLEMS STILL EXISTS AND THEY SHOULD REPLACE MY CAR WITCH IS AT 32,000 MILES AND VERY MUCH UNDER WARRANTY. THEY HAVE REFUSED TO DO SO. THEY ONLY WANT TO TRY TO FIX THE PROBLEM BUT AS GOOD AS THAT OFFER SOUNDS, ALL HAS BEEN DONE ALREADY AS PER THEIR REPAIR THEY SUGGESTED IN THEIR RECALL. I HAVE ALL THE REPAIR DOCUMENTS.

**Date Complaint Filed:** 09/16/2016
**Date of Incident:** 07/23/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10907284
**Consumer Location:** LAS VEGAS, NV
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TRANSMISSION OVERHEATS, CAUSING AN ALERT ON THE DISPLAY TO PLACE THE TRANSMISSION IN NEUTRAL THEN BACK TO DRIVE. VEHICLE IS UNRESPONSIVE UNTIL THIS IS ACCOMPLISHED AND LACKS POWER. THIS OCCURED AT VARIOUS SPEEDS FROM 35 TO 5 MPH. ACCORDING TO MESSAGE BOARDS, THIS IS A KNOWN PROBLEM. EVEN RECEIVED INFORMATION FROM THE FIAT DEALER THAT THEY WERE OFFERING SPECIAL INCENTIVES TO REPLACE VEHICLES WITH THIS TRANSMISSION. THIS WAS A SALES PITCH AND NOT AN HONES OFFER TO CORRECT THE PROBLEM.

**Date Complaint Filed:** 04/27/2016

23

**Date of Incident:** 02/27/2016
**Component(s):** ENGINE, POWER TRAIN, SUSPENSION
**NHTSA ID Number:** 10861706
**Consumer Location:** COLUMBIA, SC
**Vehicle MakeModelModelYear(s)** FIAT 500 2012
**SUMMARY:**
TL* THE CONTACT OWNS A 2012 FIAT 500. THE CONTACT STATED
THAT WHILE DRIVING AT 40 MPH, THE VEHICLE STALLED WITHOUT
WARNING. THE VEHICLE WAS TAKEN TO A DEALER WHERE THE
TECHNICIAN INFORMED THAT THE VEHICLE NEEDED TO BE RESET.
THE VEHICLE WAS REPAIRED. THE FAILURE RECURRED WITH AN
ABNORMAL SOUND EMITTING FROM THE VEHICLE. THE VEHICLE
WAS TAKEN TO THE DEALER BUT WAS NOT DIAGNOSED OR
REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE
FAULURE. THE FAILURE MILEAGE WAS 28,488…UPDATED 07/05/2016
*BF THE CONSUMER STATED SHE TOOK THE VEHICLE TO THE
DEALER, AFTER RECEIVING A RECALL NOTICE REGARDING THE
TRANSMISSION. HOWEVER, THE DEALER INFORMED HER, THE BACK
UP DEVICE WAS NOT WORKING. THE CONSUMER ALSO STATED
THERE WAS AN ISSUE WITH THE SUSPENSION. IT FELT AS THOUGH
THE VEHICLE WAS GOING TO TURN OVER. UPDATE 07/21/2016. *JB.

**Date Complaint Filed:** 03/22/2016
**Date of Incident:** 03/01/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10851071
**Consumer Location:** MOUNT HOREB, WI
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
IT HAS THE EURO TWIN AUTOMATIC CLUTCH SYSTEM, AND THE
TRANSMISSION IS VERY SLOW TO RESPOND. WHEN TRYING TO
ACCELERATE THE CAR WILL SIT FOR A SEW SECONDS BEFORE
FINALLY GOING. IT HAS PUT US IN NEAR-ACCIDENT SITUATION
SEVERAL TIMES. ITS HARD TO SPEED UP TO MERGE ON A HIGHWAY,
OR GET THROUGH A ROUND-ABOUT. WE NEVER KNOW IF THE CAR IS
GOING TO GO OR JUST SIT THERE. IT HAS HAD THE SOFTWARE
UPDATES DONE 3 TIMES, AND HAS BEEN REPORTED TO FIAT. ALL
THEY TELL US IS "ITS WORKING AS IT SHOULD" INSTEAD OF
ACKNOWLEDGING THAT THE SYSTEM ITSELF IS FLAWED. WE DO NOT
FEEL SAFE DRIVING IT THROUGH TOWN OR EVEN ON THE HIGHWAY

24

BECAUSE IT JUST DOES NOT SHIFT GEARS LIKE A SHOULD AND WE CAN'T TRUST IT.

**Date Complaint Filed:** 02/29/2016
**Date of Incident:** 02/11/2016
**Component(s):** ELECTRICAL SYSTEM, POWER TRAIN, SERVICE BRAKES
**NHTSA ID Number:** 10839085
**Consumer Location:** BEAR, DE
**Vehicle MakeModelModelYear(s)**FIAT 500 2012
**SUMMARY:**
"TAKATA RECALL" MECHANICAL DEFECT HAS BEEN DETECTED. MY CAR WAS ON THE HIGHWAY WHEN SUDDENLY IT RANDOMLY BEGAN STATING TO "CHECK TRANSMISSION SEE HANDBOOK." I TOOK IT TO A FIAT DEALERSHIP IN WHICH I IMMEDIATELY ADVISED THEM OF THE DIAGNOSIS CODE P0741 HAD BEEN PROVIDED TO THEM AT DROP OFF BEFORE ANY WORK WAS PERFORMED - TONY (THE SERVICE ADVISOR) SAID THAT WAS NOT HELPFUL COULD MEAN ANYTHING. (DIAGNOSIS MEANS: TORQUE CONVERTER CLUTCH CIRCUIT PERFORMANCE OR STUCK OFF) I WAS ADVISED NUMBERS LIES AND WAS TOLD I NEEDED A NEW TRANSMISSION. TURNS OUT THERE IS A FAULT IN THE WIRING OF THE SYSTEM AND COMPUTER WHICH IS NOW CAUSING CAR TO NOT STAY IN GEAR. I WANT TO RAISE ALL AWARENESS TO THIS ISSUE. ESPECIALLY SINCE THE PURCHASE OF THIS CAR (ONLY 58K IN MILEAGE) I HAVE HAD TO PERSONALLY REPLACE THE FOLLOWING: NUMBER OF RADIATOR REPAIRS: 2 SUNROOF: 1 TRANSMISSION: FAULTY MECHANICAL ERROR TOTAL TUNE UPS: 2 BRAKE INSTALLMENTS: 3 I WAS NOT MADE AWARE OF ANY PRIOR ISSUES BEFORE PURCHASE ALL ISSUES HAVE OCCURRED DUE TO MANUFACTURE NEGLIGENCE! NO ACCIDENTS HAVE OCCURRED. PLEASE ASSIST ME IN ANY WAY POSSIBLE.

**Date Complaint Filed:** 02/16/2016
**Date of Incident:** 01/15/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10836349
**Consumer Location:** BROCKTON, MA
**Vehicle MakeModelModelYear(s)**FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500L. AFTER DRIVING THE VEHICLE AND PARKING IT FOR APPROXIMATELY TEN MINUTES, THE

VEHICLE WOULD NOT MOVE WHEN IT WAS SHIFTED INTO REVERSE. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 14V103000 (POWER TRAIN). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 36,000. ......UPDATED 04/01/16 *BF THE CONSUMER STATED THE TRANSMISSION WAS REBUILT AFTER FIVE WEEKS. UPDATED 04/14/16. *JB

**Date Complaint Filed:** 02/08/2016
**Date of Incident:** 02/05/2016
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10824740
**Consumer Location:** WESLACO, TX
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
WHILE AT A STAND STILL IN GEAR AT A DRIVE THRU, CAR STARTED SMOKING HEAVILY. STRONG SMELL OF SOMETHING BURNING. TOOK CAR IN TO SERVICE DEPT. WAS TOLD THAT THIS PARTICULAR MODEL VEHICLE HAS BEEN HAVING ISSUES WITH STOP AND GO TRAFFIC. WAS TOLD THERE WAS NOTHING THEY COULD DO. RESEARCHED PROBLEM AND HAVE FOUND OUT THAT THERE SEEM S TO BE A LOT OF ISSUES WITH THE DDCT TRANSMISSION ON THESE CARS. CALLED FIAT USA AND EXPLAINED TO THEM THE PROBLEM AND WAS ADVISED THAT WE HAD TO PLACE THE VEHICLE (AUTOMATIC TRANSMISSION) IN NEUTRAL AT EVERY STOP AND GO SITUATION. DEALER CHECKED CLUTCH SYSTEM ON VEHICLE AND ADVISED US THAT YES THERE WAS SIGNS OF CLUTCH OVERHEATED. CALLED FIAT USA AGAIN AND ADVISED THEM OF WHAT DEALER HAD SAID AND FIAT USA TOLD ME THAT I WAS RESPONSIBLE BECAUSE I DID NOT READ MY OWNERS MANUAL. I READ THE ENTIRE MANUAL, PAGE BY PAGE AND NOWHERE IN THE MANUAL DOES IT STATE THAT THE VEHICLE HAS TO BE PLACED IN NEUTRAL AT STOP AND GO SITUATIONS. FIAT USA REFUSES TO ACKNOWLEDGE THAT THERES SEEMS TO BE A PROBLEM WITH THE CLUTCH SYSTEM ON THIS MODEL VEHICLE EVEN THOUGH THERES A LOT POST ON THE TOPIC ON THE INTERNET.

**Date Complaint Filed:** 11/17/2015

**Date of Incident:** 10/13/2015
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10794312
**Consumer Location:** MATTESON, IL
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
MY PREVIOUS COMPLAINT NHTSA # 10790955 WAS FILED PRIOR TO
FIAT DIAGNOSING MY 2014 500L. I HAVE BEEN INFORMED THAT A
REAR PLATE IN THE EURO CLUTCH TRANSMISSION FAILED CAUSING
THE THE TRANSMISSION TO BLOW APART WHILE I WAS DRIVING THE
VEHICLE.

**Date Complaint Filed:** 11/15/2015
**Date of Incident:** 08/03/2015
**Component(s):** POWER TRAIN, SERVICE BRAKES
**NHTSA ID Number:** 10790455
**Consumer Location:** MATTESON, IL
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
FIRST INCIDENT WAS TWO WEEKS AFTER I PURCHASED THE FIAT
500L. THE BRAKES JAMMED AND I ENDED REAR ENDING ANOTHER
VEHICLE. THE SECOND INCIDENT WAS SIX WEEKS AGO AFTER
REPLACING THE FRONT BRAKES. I PURCHASED NEW ROTORS AND
PADS;THAT EVENING THE BRAKES JAMMED AND CAUSED ME TO
REAR END ANOTHER VEHICLE TWICE. MY FIAT 500L HAS
EXPERIENCED LOSING COMMUNICATION FROM THE COMPUTER TO
THE TRANSMISSION, WHICH CAUSED MY VEHICLE TO STALL ON
VARIOUS STREETS AND WHILE IN MOVING TRAFFIC. ON FRIDAY 13,
2015; MY FIAT 500L MADE A NOISE SO LOUD THAT IT SOUNDED LIKE
IT WAS GOING TO BLOW UP. I IMMEDIATELY CHECKED THE ENGINE
AND IT SOUNDED LIKE A LARGE HEAVY PIECE OF METAL WAS
TRYING TO BREAK THROUGH THE ENGINE WALL. I TURNED THE
VEHICLE OFF AND WAITED FOR 20 MIN. I STARTED THE VEHICLE AND
THE NOISE WENT AWAY. AS I PULLED OFF THE VEHICLE STARTED
MAKING A REAL LOUD NOISE AND SHUT OFF. THE VEHICLE HAS
BEEN TOWED TO THE DEALER; HOWEVER FIAT IS ONLY CONCERNED
THAT THEY DO NOT HAVE TO PAY FOR IT BECAUSE THE CAR IS OUT
OF WARRANTY. MY ISSUE IS NOT THE MILEAGE; HOWEVER MY
SAFETY. I AM NOT EASILY SCARED; HOWEVER I FELT LIKE MY FIAT

500L WAS GOING TO BLOW UP. THERE IS SOMETHING SERIOUSLY WRONG WITH THIS CAR, FCA NEEDS TO BUY BACK EVERY LAST ONE.

**Date Complaint Filed:** 10/05/2015
**Date of Incident:** 10/03/2015
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10779951
**Consumer Location:** KELLER, TX
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
MY WIFE WAS IN TRAFFIC AND HER VEHICLE WOULD NOT GO AND THE TRANSMISSION LIGHT CAME ON. SHE WAS STRANDED AND HAD TO CALL A WRECKER. THE DEALER TESTED THE VEHICLE AND FOUND NOTHING WRONG EXCEPT THAT IT WAS THE DOUBLE CLUTCH DESIGN FLAW AND STATED I NEEDED TO CALL FIAT AND PLACE A COMPLAINT. I DID SO AND FIAT SAID IT WAS A NATURAL DESIGN CHARACTERISTIC AND SE NEEDS TO PUT THE CAR IN NEUTRAL WHEN IN STOP AND GO TRAFFIC. LETS FACE IT IF THE DEALER WOULD OF STATED THAT WHEN I PURCHASED THE VEHICLE I WOULD NOT HAVE PURCHASED IT. HOW STUPID DOES FIAT THINK WE AMERICANS ARE? I AM GOING FORWARD WITH A LAWSUIT. DO NOT EVER PURCHASE A FIAT PRODUCT !!!

**Date Complaint Filed:** 08/28/2015
**Date of Incident:** 08/11/2015
**Component(s):** ENGINE
**NHTSA ID Number:** 10759913
**Consumer Location:** Unknown
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. WHILE STOPPED AT A TRAFFIC LIGHT, THE VEHICLE JERKED VIOLENTLY. A MESSAGE APPEARED ON THE DASHBOARD INSTRUCTING THE CONTACT TO PLACE THE TRANSMISSION SHIFTER IN THE NEUTRAL POSITION AND THEN INTO THE DRIVE POSITION. THE CONTACT FOLLOWED THE INSTRUCTIONS AND THE ENGINE FAILED WITHOUT WARNING. THE CONTACT ATTEMPTED TO RESTART THE ENGINE MULTIPLE TIMES BEFORE SUCCEEDING. THE CHECK ENGINE WARNING LIGHT THEN ILLUMINATED. THE CONTACT STATED THAT THE VEHICLE WAS RELUCTANT TO ACCELERATE AND DRIVE SLOWLY. THE CONTACT

28

ALSO NOTICED A BURNING ODOR. THE CONTACT DISCOVERED THAT
THE ODOR WAS COMING FROM UNDER THE HOOD. THE VEHICLE WAS
TOWED TO A DEALER BUT WAS NOT DIAGNOSED OR REPAIRED. THE
MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE
APPROXIMATE FAILURE MILEAGE WAS 39,000. THE CONSUMER
STATED THE VEHICLE WAS TAKEN TO THE DEALER ON MULTIPLE
OCCASIONS FOR THE JOLTING. THE DEALER ADVISED THE
COMPUTER WAS LEARNING THE DRIVER'S HABITS AND WAS
OPERATING AS DESIGNED. AFTER THE FAILURE, THE VEHICLE WAS
TOWED TO THE DEALER AND WAS REPAIRED UNDER WARRANTY.
THE MANUFACTURER OFFERED A 60,000 MILE WARRANTY, NO
DEDUCTIBLE, FREE OF COST AND $500.00 FOR COMPENSATION. THE
CONSUMER WAS DISSATISFIED WITH THE OFFER. UPON RETRIEVING
THE VEHICLE THE DEALER ADVISED THE CONSUMER TO PUT THE
VEHICLE IN NEUTRAL WHILE AT A STOP, BECAUSE ONE OF THE
CLUTCHES SLIGHTLY DRAGS AND WOULD EVENTUALLY BURN UP,
WHICH IS WHAT CAUSED THE FAILURE. THE CONSUMER BELIEVED
THAT WAS UNACCEPTABLE.*JS

**Date Complaint Filed:** 08/24/2015
**Date of Incident:** 09/13/2013
**Component(s):** ENGINE, POWER TRAIN
**NHTSA ID Number:** 10759002
**Consumer Location:** ARLINGTON, VA
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. WHILE DRIVING AT
APPROXIMATELY 30 MPH, THE TRANSMISSION TEMPERATURE
GAUGE WARNING LIGHT ILLUMINATED AND A VOICE ACTIVATED
INDICATING THAT THE CLUTCH WAS OVERHEATING AND WARNED
THE CONTACT TO PARK THE VEHICLE IMMEDIATELY. IN ADDITION,
THE CONTACT STATED THAT WHEN THE VEHICLE WAS PARKED IN
VARIOUS WEATHER CONDITIONS, THE SHIFT LEVER FAILED TO SHIFT
OUT OF THE PARK POSITION. THE FAILURE RECURRED
INTERMITTENTLY. THE VEHICLE WAS TOWED TO A DEALER, WHERE
IT WAS INSPECTED BUT THE CAUSE OF THE FAILURE WAS NOT
DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 1,045.

**Date Complaint Filed:** 07/06/2015
**Date of Incident:** 06/20/2015
**Component(s):** POWER TRAIN, STEERING
**NHTSA ID Number:** 10732235
**Consumer Location:** ARLINGTON, VA
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. THE CONTACT STATED
THAT THE WHEN THE ENGINE WAS STARTED, THE VEHICLE FAILED
TO MOVE FORWARD OR IN REVERSE. THE VEHICLE WAS TAKEN TO
THE DEALER AND THE COMPUTER CODES WERE RESET, HOWEVER,
THE FAILURE RECURRED. THE VEHICLE THEN BEGAN TO MOVE IN
REVERSE WHEN THE GEAR WAS IN THE DRIVE POSITION. THE
VEHICLE WAS TAKEN TO THE DEALER WHERE THE TRANSMISSION
CONTROL WAS REPLACED. THE MANUFACTURER WAS MADE AWARE
OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 16,000.

**Date Complaint Filed:** 05/27/2015
**Date of Incident:** 12/31/2014
**Component(s):** ELECTRICAL SYSTEM, POWER TRAIN
**NHTSA ID Number:** 10721710
**Consumer Location:** COSTA MESA, CA
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. WHILE AT A STOP, THE
ACCELERATOR PEDAL WAS DEPRESSED BUT THE VEHICLE FAILED
TO ACCELERATE. THE CONTACT NOTICED SMOKE COMING FROM
THE TIRES. IN ADDITION, THE CONTACT STATED THAT THE VEHICLE
FAILED TO START. THE FAILURE RECURRED ON NUMEROUS
OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER WHO
DIAGNOSED THAT THE TRANSMISSION BALL BEARINGS NEEDED TO
BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 4,000.

**Date Complaint Filed:** 05/01/2015
**Date of Incident:** 12/15/2014
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10714128
**Consumer Location:** LA HABRA, CA

**Vehicle MakeModelModelYear(s)** FIAT 500 2014**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500. THE CONTACT NOTICED SMOKE EMITTING FROM THE HOOD OF THE VEHICLE. THE VEHICLE WAS TAKEN TO A DEALER WHO DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE ADJUSTED. THE VEHICLE WAS REPAIRED; HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 2,200.

**Date Complaint Filed:** 03/11/2015
**Date of Incident:** 03/10/2015
**Component(s):** ELECTRICAL SYSTEM, POWER TRAIN
**NHTSA ID Number:** 10693724
**Consumer Location:** SAN DIEGO, CA
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
WE PURCHASED THE 500L FIAT IN DECEMBER OF 2014. ON FEBRUARY 14, 2015 WE BROUGHT THE VEHICLE IN BECAUSE ON A RETURN TRIP FROM TIJUANA MEXICO WHILE IN BORDER TRAFFIC THE ENGINE STARTED SMOKING. THE CAR LOOKED LIKE IT WAS GOING TO CATCH ON FIRE, IT SMELLED OF BURNT RUBBER. WE BROUGHT THE CAR IN AND THEY EXPLAINED THAT THIS HAS BEEN HAPPENING A LOT AND THE MANUFACTURER IS AWARE BUT IS NOT DOING ANYTHING ABOUT IT. WE CONTACTED CHRYSLER USA AND OPENED A CASE, HOWEVER DURING THE CASE REVIEW THE CAR DID THE SAME THING AND WE RETURNED THE CAR TO THE SERVICE SHOP ON MARCH 10TH...WHICH AGAIN THEY SAID IT IS OUR FAULT THE CAR IS DOING THIS DUE TO DRIVER ERROR. I SHOULD EXPLAIN THAT WHAT THEY ARE CALLING DRIVER ERROR, IT IS AN AUTOMATIC VEHICLE AND CHRYSLER USA IS SAYING THAT FOR THIS VEHICLE (MIND YOU IT IS AN AUTOMATIC) IF YOU ARE IN TRAFFIC FOR A PERIOD OF 5 MINUTES OR LONGER YOU MUST SHIFT THE CAR ON EVERY OCCASION INTO NEUTRAL OR ELSE IT COULD BURN OUT THE TRANSMISSION. THEY GO ON TO SAY THAT IF THE CAR DOES SMOKE JUST PULL OVER AND AFTER THE TRANSMISSION COOLS DOWN IT IS SAFE TO DRIVE AGAIN. I ASKED CHRYSLER USA TO SHOW ME ON EXACTLY WHAT PAGE DOES IT SAY THAT IN THEIR MANUAL, FURTHERMORE THAT WHEN PURCHASING THIS CAR THE DEALER DID NOT DISCLOSE SPECIAL DRIVING INSTRUCTION FOR THEIR AUTOMATIC VEHICLE. IF THE DEALER DID DISCLOSE THAT

INFORMATION BEFORE THE SALE WE WOULD HAVE NOT BOUGHT A
CAR THAT COULD LEAVE US STRANDED IN MEXICO OR OTHER
AREAS. AT THIS POINT AFTER CHRYSLER USA, HAS REFUSED TO
SHOW US WHERE IT STATES THAT IN THE MANUAL IF IN TRAFFIC
MORE THAN FIVE MINUTES THE CAR MUST BE SHIFTED INTO
NEUTRAL TO AVOID BURNING OUT THE TRANSMISSION, AND THEY
ARE NOT INTENDING ON DOING ANYTHING BESIDES TELL US THAT
"SORRY THE CAR IS PERFORMING AS DESIGNED". WE ARE TAKING
EVERY MEANS NECESSARY TO GET A BUYBACK ON THIS VEHICLE.
*TR

**Date Complaint Filed:** 03/09/2015
**Date of Incident:** 03/09/2015
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10693082
**Consumer Location:** WASHINGTON, D.C.
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
I AM WRITING OUT OF SERIOUS CONCERN OVER THE OVERHEATING
CLUTCH ON THE FIAT 2014 500L TREKKING MODEL. I HAD
ABSOLUTELY LOVED MY FIAT, UNTIL IT OVERHEATED AFTER
SITTING IN A CAR WASH LINE FOR ALL OF MAYBE TEN MINUTES AT
THE MOST. SCARED AND EMBARRASSED THAT MY CAR WAS ON FIRE,
I HAD TO BE PUSHED OUT OF LINE AND ASSISTED BY THE CAR WASH
MANAGER, WHO POPPED THE HOOD AND TOLD ME TO CALL FOR A
TOW.I THEN CALLED THE DEALERSHIP SERVICE DEPT AND WAS
TOLD THAT UNLESS THE ENGINE LIGHT WAS ON OR TRANSMISSION
LIGHT, THAT THE OVERHEATING WAS A COMMON CONSEQUENCE OF
STOP AND GO TRAFFIC WITH A DUEL TRANSMISSION. I THEN WENT
ONLINE AND SAW ALL THE VARIOUS COMPLAINTS ABOUT THE SAME
ISSUE FROM OTHER 500 L OWNERS MUCH TO MY DISAPPOINTMENT
AND DISMAY. I LIVE IN WASHINGTON DC, THE CAPITOL CITY WITH
THE NORM BEING STOP AND GO TRAFFIC, THE WORST IN THE
NATION. I TOLD THE SERVICE REP THAT I HAD SMELLED SOMETHING
BURNING ON A PRIOR OCCASION BUT NEVER EXPERIENCED FULL ON
SMOKE AND THE VEHICLE STALLING OUT BECAUSE IT WAS
OVERHEATED WITH ABSOLUTELY NO WARNING FROM MY FIAT, NO
SERVICE LIGHT OR ANYTHING INDICATING THE CLUTCH WAS
OVERHEATING. DO I NEED TO TELL YOU ALL HOW DANGEROUS THE
OVERHEATING ISSUE CAN BE IN TRAFFIC WITH NO WARNING,

STALLING OUT, WON?T START AGAIN UNTIL IT COOLS DOWN? THIS IS A SERIOUS DEFECT. I AM BROKENHEARTED AND EXTREMELY DISAPPOINTED WITH BEING TOLD BY THE DEALERSHIP THAT FIAT USA WILL NOT REPAIR/FIX THIS ISSUE AND, TO TELL OWNERS IT IS A CONSEQUENCE OF A NEW ENGINE, ALTHOUGH I AM CLOSE TO 10K MILES. THAT IS ABSURD, PLEASE HELP ME AND OTHER FIAT 500 L OWNERS RECTIFY THIS MATTER AND PREVENT OTHER CONSUMERS FROM HAVING THIS HEADACHE IN THE FUTURE. *TR

**Date Complaint Filed:** 03/03/2015
**Date of Incident:** 02/28/2015
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10691739
**Consumer Location:** Unknown
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
IN MAY 2014 MY 2014 FIAT 500L WAS BROUGHT TO ZIEGLER DEALERSHIP FOR A SAFETY RECALL CONCERNING THE AUTOMATIC TRANSAXLE GEAR SHIFT MODULE AND THEY FLASHED THE ESM (RECALL ON NHTSA WEBSITE). IN JANUARY 2015 WE NOTICED A BURNING SMELL UNDER THE ENGINE. IF WE PUT CAR INTO REVERSE AND GAS PEDAL PUSHED, CAR HESITATED 1-2 SECONDS BEFORE THE CAR WOULD START MOVING. CAR LURCHED FORWARD SEVERAL TIMES ON ROAD AT A DEAD STOP. ROUGH SHIFTING ON ROADS. CHECK TRANSMISSION AND ENGINE WARNING LIGHT ILLUMINATED IN EARLY FEB 2015 AND WE BROUGHT IT BACK TO ZIEGLER. THEY DETERMINED IT NEEDED A NEW TRANSMISSION CONTROL MODULE. ONLY 4 MODULES IN THE ENTIRE US, AND ALL WERE SPOKEN FOR (4 OTHER FIATS IN FOR THE EXACT SAME PROBLEM). ZIEGLER CONTACTED THE MANUFACTURER TO GET AN "UPGRADED" TRANSMISSION MODULE, NOT THE ONE ORIGINALLY DESIGNED FOR THE CAR. AFTER BEING TOLD IT WOULD BE 1 1/2 MONTHS TO GET THE UNIT, IT SHOWED UP MID FEBRUARY. I CONFIRMED THAT WE GOT THIS "UPGRADED" UNIT AND DEALER SAID YES. TOOK POSSESSION OF MY CAR ON 2/13/15. THIS PAST WEEK, WE AGAIN HAD A BURNING SMELL IN THE ENGINE, ENCOUNTERED CAR LURCHING WHILE CAR WAS IN DRIVE AND FOOT SECURELY ON THE BRAKE. SLOW ENGINE REACTION WHEN HITTING GAS WHEN PUTTING CAR INTO REVERSE, ROUGH SHIFTING. WAS PLANNING ON CALLING DEALER ON MONDAY 3/2, HOWEVER ON SATURDAY 2/28/15 THE CAR

WAS INVOLVED IN A DRIVER SIDE T-BONE CRASH AS THE CAR WOULD NOT MOVE WHEN GAS PEDAL WAS PUSHED. CAR TOTALLED BY INSURANCE COMPANY. MY DAUGHTER COULD HAVE BEEN KILLED BECAUSE THE CAR DID NOT MOVE WHEN GAS PEDAL WAS PRESSED. FIAT IS NOW FIRESELLING THESE 2014 MODELS AND ARE NOT OFFERING THIS "DUAL CLUTCH" TRANSMISSION IN 2015 MODELS. THEY KNOW ABOUT THESE TRANSMISSION ISSUES BUT THEIR "FIX" IS STILL PUTTING LIVES IN JEOPARDY. IF YOU OWN THIS CAR, GET RID OF IT ASAP! *TR

**Date Complaint Filed:** 12/27/2014
**Date of Incident:** 12/27/2014
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10668520
**Consumer Location:** HOBBS, NM
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
COLD WEATHER PROBLEM. 29 DEGF OUTSIDE ON OCCURRENCE. SHIFTER WILL NOT MOVE FROM "PARK" POSITION. THIS HAS CLEARED UP BEFORE AFTER LETTING VEHICLE WARM UP. IT IS STILL IN THIS CONDITION PRESENTLY. I ROCKED VEHICLE FORWARD AND BACK, CHECKED FUSES, LET IT WARM UP TO 39 DEG F OUTSIDE WITH THE VEHICLE RUNNING FOR 20 MINUTES. STILL STUCK IN PARK. LAST WINTER THE SHIFT LEVER WOULD MOVE INTO POSITION, BUT THE TRANSMISSION WOULD NOT ENGAGE UNTIL AFTER THE VEHICLE WARMED UP. THE FIAT DEALERSHIP DID A FIRMWARE FLASH UPDATE WHICH CLEARED THAT UP. NOW THIS. THIS IS A 2014 FIAT 500L I HAVE SEEN OTHER REPORTS OF THE SAME PROBLEM ON FIAT OWNER BLOGS INDICATING THIS IS A "COMMON" PROBLEM WHICH NEEDS TO BE ADDRESSED. ONE BLOG SUGGESTED IT MAY BE VOLTAGE RELATED. *TR

**Date Complaint Filed:** 06/06/2014
**Date of Incident:** 01/16/2014
**Component(s):** ENGINE, POWER TRAIN
**NHTSA ID Number:** 10596670
**Consumer Location:** VALLEY CENTER, CA
**Vehicle MakeModelModelYear(s)** FIAT 500L 2014
**SUMMARY:**

AUTO DUAL DRY CLUTCH TRANSMISSION. MANUFACTURED 7/2013, PURCHASED NEW FROM DEALER 1/14. CAR SHUDDERED AND HESITATED ON THE TEST DRIVE. TOLD IT WOULD SMOOTH OUT BECAUSE IT WAS AN ADAPTIVE TRANSMISSION. CONTINUED TO SHUDDER, HESITATE AND LURCH. BROUGHT BACK TO THE DEALER 3 DAYS AFTER PURCHASE. THE CAR HAS BEEN IN 5 TIMES SINCE AND STILL IS NOT FIXED. THE DEALER WILL NO LONGER TAKE THE CAR FOR SERVICE AND SAID THE CAR WILL NOT FUNCTION PROPERLY DURING HEAVY, STOP AND GO TRAFFIC AND THERE IS NOTHING THEY CAN DO. THE RECALL WAS COMPLETED BUT IT DID NOT HELP. THEY SUGGESTED WE CONTACT FIAT CUSTOMER CARE WHO HAS OPENED A CASE BUT NOT RESPONDED AND NOT RETURNING PHONE CALLS. CAR IS UNUSED BECAUSE IT IS UNSAFE. IT LURCHES CONSTANTLY AND BARELY MISSES HITTING OTHER CARS IN TRAFFIC. TIMELINE: 1. TEST DRIVE SHUDDERED AND HESITATED, TOLD IT WOULD GET BETTER WITH DRIVING. 2. DAY 3 TOOK TO DEALER. SAID IT WAS SPARK PLUGS AND CHANGED OUT ALL PLUGS. CAR CONTINUES TO STUTTER, CLUTCH OVERHEAT, LURCHING. 3. DEALER TRIP, THEY SAID IT WAS "JUST THE WAY THE TRANSMISSIONS ARE AND THEY'RE SORRY BUT THERE ISN'T ANYTHING THEY CAN DO." CAR CONTINUES TO STOP, NOT SHIFT IN TO GEAR, LURCH, CLUTCH OVERHEATING. 4. RECEIVED RECALL NOTICE. ALL SERVICE PERFORMED. 5. 24 HOURS LATER, CAR NOT FUNCTIONING, BACK TO THE DEALER. DEALER REDID SOFTWARE INSTALLATION, REPLACED BRAKES, CLUTCH AND FLY WHEEL. 6. 48 HOURS LATER CLUTCH OVERHEATS, NEARLY HITS THE CAR IN FRONT OF US IN TRAFFIC. DEALER REFUSES TO ACCEPT CAR IN FOR SERVICE, SAID "THIS TRANSMISSION WILL NOT FUNCTION IN HEAVY STOP AND START TRAFFIC. YOU NEED TO CONTACT FIAT, THERE IS NOTHING MORE WE CAN DO FOR YOU." 7. FIAT CUSTOMER CARE SAYS THEY WILL OPEN A CASE ON MAY 30, 2014. NO RESPONSES SINCE. DANGEROUS VEHICLE SHOULD BE TAKEN BACK AND REFUNDED OR EXCHANGED WITH A MODEL MANUFACTURED AFTER JANUARY 2014. *TR

**Date Complaint Filed:** 04/07/2014
**Date of Incident:** 03/20/2014
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10577940
**Consumer Location:** HAPPY VALLEY, OR

**Vehicle MakeModelModelYear(s)** FIAT 500L 2014
**SUMMARY:**
TL* THE CONTACT OWNS A 2014 FIAT 500L. THE CONTACT WAS INCLUDED IN NHTSA RECALL CAMPAIGN ID NUMBER: 14V103000 (TRANSMISSION SHIFT LEVER). THE CONTACT STATED WHILE DRIVING AT ANY SPEED UP A HILL, DOWN A HILL OR FLAT LAND THE GEARS SLIPPED FORWARD IN DRIVE AND BACKWARD WHILE IN REVERSE. THE CONTACT APPLIED THE BRAKES WITH FORCE AND THE VEHICLE FAILED TO STOP. THE FAILURE WAS INSPECTED, DIAGNOSED AND REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 250.

**Date Complaint Filed:** 01/24/2014
**Date of Incident:** 01/23/2014
**Component(s):** POWER TRAIN
**NHTSA ID Number:** 10561396
**Consumer Location:** MADISON, WI
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
WE'VE BEEN DEALING WITH THIS ISSUE SINCE BEFORE CHRISTMAS WITH OUR NEW FIAT 500. I WAS ABLE TO DRIVE IT FOR A COUPLE OF WEEKS WITH THE CHECK ENGINE LIGHT STAYING ON, AND ONCE IN A WHILE THE SHIFTER PANEL LIGHTS FLASHING FOR ABOUT 30 SECONDS BEFORE I WAS ABLE TO DRIVE IT WHILE WE WAITED FOR PARTS. IT TOOK TWO WEEKS FOR THE DEALERSHIP TO GET A NEW CONTROL MODULE IN, FIRST THEY GOT A MODULE THAT DIDN'T WORK, THEN THEY GOT ONE THAT DID WORK AND WE THOUGHT IT WAS FIXED. LAST NIGHT MY WIFE IS DRIVING HOME FROM WORK ON THE EXPRESSWAY AND SUDDENLY THE "NO GEAR FOUND" ERROR POPS UP ON THE THE DASHBOARD DISPLAY, THE TRANSMISION DISENGAGED INTO NEUTRAL. NO ACCELERATION WHATSOEVER. THE ENGINE IS STILL RUNNING, THE BRAKES WORK, THE LIGHTS ARE ON, BUT NO GEARS. SHE WAS ABLE TO COAST TO THE SHOULDER, CALLED A TOW TRUCK AND GOT IT BACK TO THE DEALERSHIP. WE ARE WAITING ON PARTS AGAIN. *TR

**Date Complaint Filed:** 01/24/2014
**Date of Incident:** 12/21/2012
**Component(s):** ENGINE, POWER TRAIN
**NHTSA ID Number:** 10561386

**Consumer Location:** NEW BALTIMORE, MI
**Vehicle MakeModelModelYear(s)** FIAT 500 2014
**SUMMARY:**
CAR DOES NOT SHIFT FROM PARK TO DRIVE. INSTRUMENT PANEL
RELAYS MANY WARNINGS (GEAR NOT AVAILABLE, TRANSMISSION
WARNING, SEEK SERVICE) AND CHECK ENGINE LIGHT COMES ON.
THIS IS OCCURRING DAILY NOW AND FIAT DOES NOT HAVE A FIX.
CODES CAN BE CLEARED BY THE DEALERSHIP AND THE
TRANSMISSION MODULE IS WHERE THE WARNINGS ARE STORED. I
HAVE BEEN TOLD IT IS SAFE TO DRIVE. I HAVE BEEN TOLD TO LET
THE CAR WARM UP FOR 2 MINUTES BEFORE PUTTING IT INTO DRIVE.
*TR

**Date Complaint Filed:** 10/10/2013
**Date of Incident:** 03/02/2012
**Component(s):** ENGINE, POWER TRAIN
**NHTSA ID Number:** 10547474
**Consumer Location:** WORCESTER, MA
**Vehicle MakeModelModelYear(s)** FIAT 500 2012
**SUMMARY:**
WHEN I AM DRIVING AND I AM START SLOWING DOWN FOR A LIGHT
BEFORE IT GET TO A FULL STOP THE TRANSMISSION DOWN SHIFT TO
QUICK THAT MAKES THE CAR JERK, I STOP AND WAIT FOR THE LIGHT
TO CHANGE AND IT DOWNSHIFT BY ITSELF, IT FEELS LIKE
SOMEBODY IS HITTING YOU ON THE REAR OF THE CAR BUT NOBODY
IS THERE .I BROUGHT THE CAR SEVERAL TIMES TO THE DEALER BUT
BECAUSE IT DOES NOT HAPPEN ALL THE TIME NOTHING THEY
COULD DO ABOUT IT. ONE OF THE TIMES THAT I WAS AT THE
DEALER IT HAPPENED. I PUT THE CAR IN REVERSE, DROVE IT FOR 10
FEET AND THEN SHIFTED TO FORWARD AND THE TRANSMISSION
WOULD NOT DO ANYTHING FOR 3 TO 4 SECONDS THEN A JUMP
(SHIFTED TO 1ST GEAR) I WAS WITH THE PERSON WHO MAKES THE
APPOINTMENTS SO HE TOLD ME TO BRING THE CAR NEXT DAY. NEXT
DAY THEY DROVE IT AND THE CAR WOULD SHIFT FINE SO NOTHING
WAS FIXED. LAST WEEK, I TOLD THEN TO KEEP THE CAR AND LET
THE FOREMAN TO DRIVE IT HOME SO HE WOULD FEEL WHAT IT WAS
HAPPENING, HE TOLD ME THAT IT HAPPENED ONCE BUT ON
DOWNSHIFT AND THAT COULD BE A COMPUTER PROGRAM AND I
HAVE TO WAIT UNTIL FIAT DEVELOP A NEW PROGRAM. THEY TRIED
EVERYTHING THAT THEY KNOW AND THE FINAL SOLUTION WAS THE

WAY THAT I DRIVE OR THE COMPUTER HAVE TO ADJUST WHEN I CHANGE MY DRIVING FROM THE HIGHWAY TO THE CITY I THING IS A LOT OF BS I DRIVE 120 MILES DAILY TO WORK AND I AM WORRY THAT THE DOWNSHIFT WILL HAPPEN WHEN I AM DRIVING ON HIGHWAY SPEED AND OF COURSE THEY TOLD ME THAT THE DOWNSHIFT WILL NOT HAPPEN ON HIGHER SPEED EVEN THAT THEY SAID THEY DO NOT KNOW WHY I KEEP BRINGING THE CAR WITH THE SAME TRANSMISSION PROBLEM. PLEASE HELP ME TO RESOLVE THIS PROBLEM BECAUSE EVEN THE CAR FOLDS ON THE LEMON LAW STILL I HAVE TO MAKES THE PAYMENTS. [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

80.     Any applicable statute of limitations has been tolled by Fiat's knowing and active concealment of the PCM Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the PCM Defect and could not reasonably discover the defect or Fiat's deception with respect to the PCM Defect.

81.     Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Fiat was concealing a defect and/or that the Class Vehicles contained the PCM Defect and corresponding safety hazard. As alleged herein, the existence of the PCM Defect and corresponding safety hazard were material to Plaintiffs and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered

38

through the exercise of reasonable diligence that Fiat was concealing the PCM Defect in the Class Vehicles.

82.     All applicable statutes of limitation have been tolled by Fiat's knowing, active, and ongoing affirmative concealment of the facts alleged herein including the PCM Defect and safety hazard. Plaintiffs and members of the Classes reasonably relied on Fiat's knowing, active and ongoing affirmative concealment.

83.     At all times, Fiat was and is under a continuous duty to disclose to Plaintiff and members of the Classes the true standard, quality, character, nature and grade of the Class Vehicles and to disclose the PCM Defect and associated safety hazard. Instead, Fiat actively concealed the true standard, quality, character, nature and grade of the Class Vehicles and knowingly made misrepresentations and omissions about the quality, reliability, safety, characteristics and performance of the Class Vehicles. Plaintiffs and members of the Class reasonably relied on Fiat's knowing and affirmative misrepresentations and concealment of the facts alleged herein.

84.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Fiat's fraudulent concealment; further, Fiat is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

85.    Plaintiffs bring this action pursuant to the provisions of Rules 23(a),

23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of

themselves and the following proposed classes:

> **<u>Nationwide Class:</u>**
> All persons or entities in the United States
> who purchased or leased a 2012-2015 Fiat 500
> containing the C635 Dual Dry Clutch Transmission.
>
> **<u>California Subclass</u>**
> All members of the Nationwide Class who are
> residents of California or purchased or leased a
> Class Vehicle in California.
>
> **<u>Ohio Subclass</u>**
> All members of the Nationwide Class who are
> residents of Ohio or purchased or leased a
> Class Vehicle in Ohio.

86.    Excluded from the Class are Fiat, its employees, co-conspirators,

officers, directors, legal representatives, heirs, successors, wholly- or partly-

owned, and its subsidiaries and affiliates; Fiat dealers; Class counsel and their

employees; the judicial officers and associated court staff assigned to this case and

their immediate family members; all persons who make a timely election to be

excluded from the Class; governmental entities; and the judge to whom this case is

assigned and his/her immediate family.

87.    Certification of Plaintiffs' claims for class-wide treatment is

appropriate because Plaintiffs can prove the elements of their claims on a class-

wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

88.   This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

89.   <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. More than 150,000 Class Vehicles have been sold in the United States. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

90.   <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.   Whether Fiat engaged in the conduct alleged herein;

      b.   Whether Fiat designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

      c.   Whether the defective transmission in the Class Vehicles constitutes a safety defect;

      d.   Whether Fiat knew about the defect in the transmission and, if so, how long Fiat has known of it;

e.  Whether Fiat designed, manufactured, marketed, and distributed the
Class Vehicles with a defective transmission;

f.  Whether Fiat's conduct violates consumer protection statutes, false
advertising laws, sales contracts, warranty laws, and other laws as
asserted herein;

g.  Whether Plaintiffs and the other Class members overpaid for their
Class Vehicles;

h.  Whether Plaintiffs and the other Class members are entitled to
equitable relief, including, but not limited to, restitution or injunctive
relief; and

i.  Whether Plaintiffs and the other Class members are entitled to
damages and other monetary relief and, if so, in what amount.

91.  <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs'
claims are typical of the other Class members' claims because, among other things,
all Class members were comparably injured through Fiat's wrongful conduct as
described above.

92.  <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are
adequate Class representatives because their interests do not conflict with the
interests of the other members of the Class they seek to represent; Plaintiffs have
retained counsel competent and experienced in complex class action litigation; and
Plaintiffs intend to prosecute this action vigorously. The interests of the Class will
be fairly and adequately protected by Plaintiffs and their counsel.

93.  <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure
23(b)(2): Fiat has acted or refused to act on grounds generally applicable to

42

Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

94.     <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Fiat, so it would be impracticable for the members of the Class to individually seek redress for Fiat's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **VIOLATIONS ALLEGED**

### **A.     Claims Brought on Behalf of the Nationwide Class**

## **COUNT I**

## **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
### **(15 U.S.C. § 2301, *ET SEQ*.)**

**(On behalf of the Nationwide Class)**

95.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

96.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

97.    Fiat is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

98.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

99.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

100.   Fiat's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

101.   Fiat breached these warranties, as described in more detail above. Without limitation, the Class Vehicles are equipped with a PCM Defect that puts vehicle occupants' safety in jeopardy.  The transmission system in the Class Vehicles is defectively designed, manufactured and unsafe, contrary to Fiat's representations about its vehicles. The Class Vehicles share a common design and

44

manufacturing defect which can, among other things, allow the car to jerk and/or stall unexpectedly.

102.    Plaintiffs and the other Nationwide Class members have had sufficient direct dealings with either Fiat or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Fiat on one hand, and Plaintiffs and each of the other Nationwide Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Fiat and its dealers, and specifically, of Fiat's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

103.    Affording Fiat a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Fiat has already attempted to do so through an ineffective recall campaign. However, the recall has failed to cure the defect.

104.    At the time of sale or lease of each Class Vehicle, Fiat knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

45

Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Fiat a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

105.   Plaintiffs and the other Nationwide Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Fiat is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Nationwide Class members have not re-accepted their Class Vehicles by retaining them.

106.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

107.   Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**B.    Claims Brought on Behalf of the California Subclass**

## COUNT II

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, ET SEQ.)**

46

108.   Plaintiff Shipley ("Plaintiff," for purposes of all California Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

109.   Plaintiff brings this Count on behalf of the California Subclass.

110.   California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

111.   Fiat's conduct, as described herein, was and is in violation of the UCL. Fiat's conduct violates the UCL in at least the following ways:

a.   By knowingly and intentionally concealing from Plaintiffs and the other Class members that the Class Vehicles suffer from the PCM Defect while obtaining money from Plaintiffs and the Class;

b.   By marketing the Class Vehicles as possessing functional and defect-free transmission systems;

c.   By refusing or otherwise failing to adequately repair and/or cure the PCM Defect in the Class Vehicles;

d.   By engaging in business practices in a manner which is contrary to public policy, is immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweighs its benefits;

e.   By violating federal laws, including but not limited to, the Motor Vehicle Safety Act and NHTSA regulations, by failing to effectively recall and repair vehicles that contain a safety defect; Section 5 of the FTC Act, which prohibits "unfair or

47

deceptive acts or practices in or affecting commerce; and Violation of the Magnuson-Moss Warranty Act;

f.   By violating common law, including breach of express warranty; breach of implied warranty of merchantability; unjust enrichment; and/or

g.   By violating other California laws, including Breach of the Implied Warranty of Merchantability; Violations of the Song-Beverly Consumer Warranty Act; California laws governing false advertising and consumer protection, including but not limited to California's False Advertising Law; California's Consumer Legal Remedies Act.

112.   Fiat's misrepresentations and/or omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and/or omissions, Plaintiff and the other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that instead operated safely and did not contain the PCM Defect.

113.   Accordingly, Plaintiff and the other Class members have suffered injury in fact, including lost money or property, as a result of Fiat's misrepresentations and/or omissions.

114.   Because Fiat fraudulently concealed the PCM Defect and the true performance of cars equipped with the unsafe transmission system, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to

48

those vehicles by Fiat's conduct, they are now worth significantly less than they otherwise would be.

115.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Fiat under CAL. BUS. & PROF. CODE § 17200.

116.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Fiat from continuing its unfair, unlawful, and/or deceptive practices; to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§ 17203 & 3345; and for such other relief set forth below.

## COUNT III

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.)

117.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

118.    Plaintiff brings this Count on behalf of the California Subclass.

119.    California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq*., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

49

120.   The Class Vehicles are "goods" as defined in CAL. CIV. CODE §§ 1751(a).

121.   Plaintiff and the other Class members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiff, the other Class members, and Fiat are "persons" as defined in CAL. CIV. CODE § 1761(c).

122.   As alleged above, Fiat made numerous representations concerning the benefits, efficiency, performance, and safety features of the Class Vehicles that were misleading.

123.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members were deceived by Fiat's failure to disclose that the Class Vehicles were equipped with the PCM Defect and the associated safety risks that accompanied the defective transmission system.

124.   Fiat's conduct, as described herein, was and is in violation of the CLRA. Fiat's conduct violates at least the following enumerated CLRA provisions:

a.   CAL. CIV. CODE § 1770(a)(2): Misrepresenting the approval or certification of goods;

b.   CAL. CIV. CODE § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c.   CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

d.   CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

e.    CAL. CIV. CODE § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

f.    CAL. CIV. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

g.    CAL. CIV. CODE § 1770(a)(17): Inserting an unconscionable provision in the contract.

125.   Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from Fiat's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

126.   Because Fiat materially omitted and/or fraudulently concealed the PCM Defect and the true performance of cars equipped with the defective transmission systems, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Fiat's conduct, they are now worth significantly less than they otherwise would be.

127.   Fiat knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the unsafe transmission system, and that the Class Vehicles were not suitable for their intended use.

128.   The facts concealed and omitted by Fiat to Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles

or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

129.   Plaintiff is concurrently serving Defendant with a CLRA notification and demand letter via certified mail, return receipt requested.  The notice letter sets forth the relevant facts, notifies Defendant of its CLRA violations, and requests that Defendant promptly remedy those violations.

130.   Plaintiff, individually and on behalf of the class, intends to amend this complaint to add damages claims if Defendants do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

131.   In accordance with Civil Code § 1780 (a), Plaintiff and the other Class members seek injunctive and equitable relief for Fiat's violations of the CLRA, including an injunction to enjoin Fiat from continuing its unfair and/or deceptive advertising, acts, and/or business practices in connection with the lease and/or sale of the Class Vehicles.

132.   Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against Defendants under the CLRA for injunctive and equitable relief _only_ to enjoin the practices described herein.

133.   Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

134.   Plaintiff and the other Class members' injuries were proximately caused by Fiat's fraudulent and deceptive business practices.

135.   Defendant's practices, acts and courses of conduct in connection with the sale of its products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair or fraudulent practices as described throughout the Complaint.

136.   Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's unfair and/or deceptive acts and/or practices.

137.   Therefore, Plaintiff and the other Class members are entitled to injunctive relief under the CLRA.

## COUNT IV

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500, ET SEQ.)**

138.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

139.   Plaintiff brings this Count on behalf of the California Subclass.

53

140.   CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . .
corporation . . . with intent directly or indirectly to dispose of real or personal
property . . . to induce the public to enter into any obligation relating thereto, to
make or disseminate or cause to be made or disseminated . . . from this state before
the public in any state, in any newspaper or other publication, or any advertising
device, . . . or in any other manner or means whatever, including over the Internet,
any statement . . . which is untrue or misleading, and which is known, or which by
the exercise of reasonable care should be known, to be untrue or misleading."

141.   Fiat caused to be made or disseminated through California and the
United States, through advertising, marketing and other publications, statements
that were untrue or misleading, and which were known, or which by the exercise of
reasonable care should have been known to Fiat, to be untrue and misleading to
consumers, including Plaintiff and the other Class members.

142.   Fiat has violated CAL. BUS. & PROF. CODE § 17500 because the
misrepresentations and omissions regarding the safety, reliability, and functionality
of Class Vehicles, as set forth in this Complaint, were material and likely to
deceive a reasonable consumer.

143.   Plaintiff and the other Class members have suffered an injury in fact,
including the loss of money or property, as a result of Fiat's unfair, unlawful,
and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs

and the other Class members relied on the misrepresentations and/or omissions of Fiat with respect to the safety, performance, and/or reliability of the Class Vehicles.

144.   Fiat's representations turned out not to be true because the Class Vehicles are distributed with the PCM Defect, rendering essential vehicle functions inoperative and placing Plaintiff and the Class at risk of injury. Had Plaintiff and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

145.   Because Fiat fraudulently concealed and/or materially omitted the existence of the PCM Defect and the true performance of cars equipped with the defective transmission systems, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Fiat's conduct, they are now worth significantly less than they otherwise would be.

146.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Fiat's business. Fiat's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

147.   Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Fiat from continuing their unfair, unlawful, and/or deceptive practices, to restore to Plaintiff and the other Class members any money Fiat acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

148.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

149.   Plaintiff brings this Count on behalf of the California Subclass.

150.   Fiat is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2314.

151.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to CAL. COM. CODE § 2314.

152.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the transmission system is unsafe, and was not adequately designed, manufactured, and tested.

56

153.   Fiat was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like Fiat routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

154.   Plaintiff and the other Class members have had sufficient direct dealings with either Fiat or their agents (dealerships) to establish privity of contract between Plaintiff and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Fiat and its dealers; specifically, they are the intended beneficiaries of Fiat's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

155.   As a direct and proximate result of Fiat's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## **COUNT VI**

## FRAUDULENT CONCEALMENT
## (BASED ON CALIFORNIA LAW)

156.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

157.    Plaintiff brings this Count on behalf of the California Subclass.

158.    As set forth above, Fiat concealed and/or suppressed material facts concerning the safety, quality, functionality, and reliability of the Class Vehicles.

159.    Fiat had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed the Class Vehicles as safe and proclaimed that safety is one of Fiat's highest corporate priorities. Once Fiat made representations to the public about safety, quality, functionality, and reliability, Fiat was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially contradict those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

160.    In addition, Fiat had a duty to disclose these omitted material facts because they were known and/or accessible only to Fiat which has superior knowledge and access to the facts, and Fiat knew they were not known to or reasonably discoverable by Plaintiff and the other Class members. These omitted facts were material because they directly impact the safety, quality, functionality, and reliability of the Class Vehicles.

58

161.    Whether or not the Class Vehicles' transmission system worked; whether the transmission system reliably performed as intended; and whether the transmission system, in fact, could and should have been repaired or replaced in order to mitigate risk to consumers, are material safety concerns. Fiat possessed exclusive knowledge of the PCM Defect rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

162.    Fiat actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other Class members to purchase or lease Class Vehicles at a higher price for the Class Vehicles which did not match the Class Vehicles' true value.

163.    Fiat still has not made full and adequate disclosures and continues to defraud Plaintiff and the other Class members.

164.    Plaintiff and the other Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the other Class members' actions were justified. Fiat was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

165.    As a result of the concealment and/or suppression of the facts, Plaintiff and the other Class members sustained damage.

166.   Fiat's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and well-being to enrich Fiat. Fiat's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (CAL. CIV. CODE §§ 1791.2 & 1793.2(D))

167.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

168.   Plaintiff brings this Count on behalf of the California Subclass.

169.   Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

170.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

171.   Fiat is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

172.   Plaintiff and the other Class members bought/leased new motor vehicles manufactured by Fiat.

60

173.   Fiat made express warranties to Plaintiff and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

174.   In connection with the purchase or lease of each one of its new vehicles, Fiat provides a basic limited warranty for a period of four years or 50,000 miles, whichever occurs first. This basic warranty exists to cover "defect in materials or workmanship."

175.   As set forth above in detail, the Class Vehicles' transmission systems are inherently defective, a defect that was and continues to be covered by Fiat's express warranties, and this defect substantially impairs the use, value, operation and safety of the vehicles to reasonable consumers like Plaintiff and the other Class members.

176.   Plaintiff Shipley and other Class members delivered their Class Vehicles to Fiat or its authorized repair facility for repair of the defect and/or notified Fiat in writing of the need for repair the defect because they reasonably could not deliver the Class Vehicles to Fiat or its authorized repair facility due to fear of the PCM Defect.

177.   Fiat and its authorized repair facilities failed and continue to fail to repair the Class Vehicles to match Fiat's written warranties after a reasonable number of opportunities to do so.

178.   As a result of Fiat's breach of its express warranties, Plaintiff and the other Class members received goods whose dangerous condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Fiat's products, the products' malfunctioning, and the nonuse of their Class Vehicles.

179.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

180.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## COUNT VIII

### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. CIV. CODE §§ 1791.1 & 1792)

181.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

182.   Plaintiff brings this Count on behalf of the California Subclass.

183.   Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

62

184.   The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

185.   Fiat is a "manufacturer" of the Class Vehicles within the meaning of CAL. CIV. CODE § 1791(j).

186.   Fiat impliedly warranted to Plaintiff and the other Class members that its Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

187.   CAL. CIV. CODE § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)   Pass without objection in the trade under the contract description.
>
> (2)   Are fit for the ordinary purposes for which such goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact made on the container or label.

188.   The Class Vehicles would not pass without objection in the automotive trade because of the PCM Defect in the Class Vehicles. The transmission system in the Class Vehicles was not adequately designed, manufactured, and/or tested.

189.    Because of the PCM Defect in the Class Vehicles, they are not in merchantable condition and thus not fit for ordinary purposes.

190.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the PCM Defect in the Class Vehicles.

191.    Fiat breached the implied warranty of merchantability by manufacturing and selling the Class Vehicles containing the PCM Defect. Furthermore, these defects have caused Plaintiffs and the other Class members to not receive the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

192.    As a direct and proximate result of Fiat's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Fiat's products, the products' malfunctioning, and the non-use of their Class Vehicles.

193.    Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

194.    Pursuant to CAL. CIV. CODE § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**C.    Claims Brought on Behalf of the Ohio Subclass**

**COUNT IX**

**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT
(OHIO REV. CODE § 1345.01, *ET SEQ.*)**

195.    Plaintiff Melinda Shoemaker ("Plaintiff," for purposes of all Ohio Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

196.    Plaintiff brings this Count on behalf of the Ohio Subclass.

197.    Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, OHIO REV. CODE § 1345.01 ("OCSPA"). Fiat is a "supplier" as defined by the OCSPA. Plaintiff and the other Ohio Subclass members' purchases or leases of the Class Vehicles were "consumer transactions" as defined by the OCSPA.

198.    OCSPA proscribes that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."  1345.02(A).

199. By willfully failing to disclose and actively concealing the defective transmission in connection with a consumer transaction, Fiat engaged in

65

unfair or deceptive acts or practices within the meaning of 1345.02(A).

Fiat engaged in unfair and/or deceptive business practices prohibited by

the OCSPA, including, but not limited to: (1) representing hat the

subject of a consumer transaction has sponsorship, approval,

performance characteristics, accessories, uses, or benefits that it does

not have; (2) representing that the Class Vehicles have characteristics,

uses, benefits, and qualities which they do not have, (2) representing

that the Class Vehicles are of a particular standard, quality, and grade

when they are not, (3) advertising the Class Vehicles with the intent not

to sell them as advertised, (4) representing that the subject of a

consumer transaction has been supplied in accordance with a previous

representation, if it has not; (5) representing that a consumer transaction

involves or does not involve a warranty, a disclaimer of warranties or

other rights, remedies, or obligations if the representation is false; and

(6) engaging in acts or practices which are otherwise unfair, misleading,

false, and/or deceptive to the consumer.

200.   In the course of its business, Fiat willfully failed to disclose and

actively concealed the PCM Defect discussed herein, and otherwise engaged in

activities with a tendency or capacity to confuse and /or deceive. Fiat also engaged

in unlawful trade practices by employing deception, deceptive acts or practices,

fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

201.   Fiat knew it had installed a defective transmission system and knew that the Class Vehicles did not operate safely, as advertised. Fiat knew this prior to, during, and after the sale, but concealed all such information.

202.   Fiat was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants. Fiat concealed this information as well.

203.   By failing to disclose that the Class Vehicles did not operate safely because of the PCM Defect, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, Fiat engaged in unfair and/or deceptive business practices in violation of the OCSPA.

204.   Fiat's unfair and/or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicle with the PCM Defect, the quality of the Fiat brand, the devaluing of safety and performance at Fiat, and the true value of the Class Vehicles.

67

205.   Fiat intentionally and/or knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Ohio Subclass.

206.   Fiat knew or should have known that its conduct violated the OCSPA.

207.   As alleged above, Fiat made material statements about the safety and utility of the Class Vehicles and the Fiat brand that were either false or misleading.

208.   Fiat owed Plaintiffs a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at Fiat, because Fiat:

a.   Possessed exclusive knowledge that it valued profits and cost-cutting over safety and performance, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations about the safety and performance of the Class Vehicles generally, and the defective transmission in particular, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

209.   Because Fiat fraudulently concealed the PCM Defect and the true performance of the Class Vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Fiat's conduct, they are now worth significantly less than they otherwise would be.

210.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Fiat in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

      a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

      b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

      c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

      d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

      e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

      f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc*. (OPIF #10002347);

      g.    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc*. (OPIF #10001586);

      h.    *State ex rel. William J. Brown v. Harold Lyons, et al*. (OPIF #10000304);

      i.    *Brinkman v. Mazda Motor of America, Inc*. (OPIF #10001427);

      j.    *Khouri v. Don Lewis* (OPIF #100001995);

       k.    *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

       l.    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

       m.    *Brown v. Spears* (OPIF #10000403).

211.   As a result of its violations of the OCSPA, as detailed above, Fiat caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the class period has owned or leased, a Class Vehicle that is defective. Defects associated with the PCM have caused the value of the Class Vehicles to decrease.

212.   Plaintiff and the Class sustained damages as a result of Fiat's unlawful acts and are therefore entitled to damages and other relief as provided under the OCSPA.

213.   Because Fiat fraudulently concealed the PCM Defect and the true performance of cars equipped with the defective transmission systems, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Fiat's conduct, they are now worth significantly less than they otherwise would be.

214.   Plaintiffs also seek court costs and attorneys' fees as a result of Fiat's violations of the OCSPA, as provided in OHIO REV. CODE § 1345.09.

**COUNT X**

## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

215.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

216.   Plaintiff brings this Count on behalf of the Ohio Subclass.

217.   Fiat intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

218.   In advertising and other forms of communication, including standard and uniform material provided with each car, Fiat further affirmatively concealed from Plaintiffs that the Class Vehicles it was selling contained the PCM Defect which can allow the car to stall unexpectedly and not perform and operate properly or safely when driven in normal usage.

219.   Fiat knew, at the time it actively concealed this information, that this information was material.

220.   The Class Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained the PCM Defect, as alleged herein.

71

221.   Fiat had a duty to disclose that these Class Vehicles were defective, unsafe, and unreliable in that the Class Vehicles contained the PCM Defect which can allow the car to stall unexpectedly, because Plaintiffs and the other Class members relied on Fiat's material representations that the Class Vehicles they were purchasing were safe and free from defects.

222.   The aforementioned concealment was material because if, it had been disclosed, Plaintiffs and the other Class members would not have purchased or leased the Class Vehicles, or would not have purchased or leased those Vehicles at the prices they paid.

223.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Fiat knew or recklessly disregarded that its representations were false because it knew that the transmission system in the Class Vehicles is defective and exposes drivers, occupants and members of the public to safety risks. Fiat intentionally made the false statements in order to sell Class Vehicles.

224.   Plaintiff and the other Class members relied on Fiat's reputation – along with Fiat's failure to disclose the faulty and defective nature of the PCM – in purchasing or leasing Fiat's Class Vehicles.

225.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to,

their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

226.    Fiat's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

## COUNT XI

## BREACH OF EXPRESS WARRANTY
## (OHIO REV. CODE § 1302.26, *ET SEQ.*) (U.C.C. § 2-313)

227.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

228.    Plaintiff brings this Count on behalf of the Ohio Subclass.

229.    Fiat is and was at all relevant times a merchant with respect to motor vehicles.

230.    In connection with the purchase or lease of each one of its new vehicles, Fiat provides an express basic limited warranty for a period of four years or 50,000 miles, whichever occurs first. This basic limited warranty covers "defect in materials or workmanship."

231.    As a manufacturer of automobiles, Fiat was required to provide these warranties to purchasers of its Class Vehicles.

232.   Fiat's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the defective transmission system from Fiat.

233.   Plaintiff and the Class members experienced defects within the warranty period.  Despite the existence of warranties, Fiat failed to inform Plaintiff and Class members that the Class Vehicles were defectively designed, and failed to fix the transmission systems free of charge.

234.   Fiat breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any part supplied by Fiat. Fiat has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

235.   Affording Fiat a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

236.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole, and because Fiat has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

237.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing

defect, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

238.   Also, as alleged in more detail herein, at the time Fiat warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to Fiat's warranties and were inherently defective, and Fiat wrongfully and materially omitted and/or fraudulently concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

239.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to Fiat's fraudulent conduct as alleged herein. Due to Fiat's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

240.   Fiat was provided notice of these issues by numerous complaints filed against it, including complaints to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

241. As a direct and proximate result of Fiat's breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (OHIO REV. CODE § 1302.27) (U.C.C. § 2-314)

242. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

243. Plaintiff brings this Count on behalf of the Ohio Subclass.

244. Fiat is and was at all relevant times a merchant with respect to motor vehicles.

245. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the defective transmission system was not adequately designed, manufactured, and/or tested.

246. Fiat was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like Fiat routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

76

247.    As a direct and proximate result of Fiat's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XIII

### UNJUST ENRICHMENT
### (BASED ON OHIO LAW)

248.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

249.    Plaintiff brings this Count on behalf of the Ohio Subclass.

250.    Fiat has received and retained a benefit from Plaintiff and the Class and inequity has resulted.

251.    Fiat has benefitted from selling and leasing defective cars whose value was artificially inflated by Fiat's concealment of the PCM Defect at a profit, and Plaintiff and the Class have overpaid for the cars and been forced to pay other costs.

252.    Thus, all Ohio Subclass members conferred a benefit on Fiat.

253.    It is inequitable for Fiat to retain these benefits.

254.    Plaintiff was not aware of the true facts about the Class Vehicles, and did not benefit from Fiat's conduct.

255.    Fiat knowingly accepted the benefits of its unjust conduct.

256.    As a result of Fiat's conduct, the amount of its unjust enrichment

should be disgorged, in an amount according to proof.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the

Class and Subclasses, respectfully request that the Court enter judgment against

Defendant and in favor of Plaintiff, the Class, and Subclasses, and award the

following relief:

A.    Certification of this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the

Class and Subclasses, and Plaintiffs' counsel as counsel for the Class and

Subclasses;

B.    An order awarding declaratory relief and temporarily and permanently

enjoining Fiat from continuing the unlawful, deceptive, fraudulent, and unfair

business practices alleged in this Complaint;

C.    Appropriate injunctive relief;

D.    Equitable relief, including but not limited to the buyback of the Class

Vehicles;

E.    A declaration that Fiat is financially responsible for all Class notice

and the administration of Class relief;

F.      Expressly disclaiming any and all damages pursuant to Cal. Civ. Code. 1750 *et seq*., that the Court enter judgment against Defendant for restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial.

G.      An order awarding any applicable statutory and civil penalties;

H.      An order requiring Fiat to pay both pre- and post-judgment interest on any amounts awarded;

I.      An award of costs, expenses, and attorneys' fees as permitted by law; and

J.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: September 25, 2017                  Respectfully submitted,

*/s/ E. Powell Miller*_____
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200

Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580
Facsimile: (610) 727-4360
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

Richard D. McCune
David C. Wright
**MCCUNE WRIGHT AREVALO LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com

Tiffany M. Yiatras
**CONSUMER PROTECTION LEGAL,
LLC**
308 Hutchinson Road
Ellisville, Missouri 63011
Telephone: (314) 541-0317
Facsimile: (855) 710-7706
tiffany@consumerprotectionlegal.com